**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ELEVATOR CABLE & SUPPLY COMPANY, d/b/a ECS CORPORATION,<br><br>     Plaintiff,<br><br><br>v.<br><br>KEN SULLIVAN, JR. and ESCALATOR STEP CLEANING SERVICE, INC.,<br><br>    Defendants. | Case No.:_____<br><br><br>Jury Trial Demanded |

Plaintiff, Elevator Cable & Supply Company, d/b/a/ ECS Corporation ("ECS") submits the following Complaint against Defendant, Ken Sullivan Jr. ("Sullivan") and Escalator Step Cleaning Service Inc. ("ESCS") (Sullivan and ESCS collectively referred to as "Defendants").

## Introduction

1.  Plaintiff ECS brings this lawsuit against its former president, Defendant Sullivan, for breach of fiduciary duty, breach of contract, conversion, and violation of state and federal statutes banning various forms of unfair competition, false advertising, false designation of origin and deceptive trade practices. ECS has discovered that Defendant Sullivan, while serving as president of ECS and sitting on its board of directors, set up and operated a competing company using ECS resources including its

1

money, corporate likeness, employees, equipment, logos, telephones, business forms, computers, website, and office space. In an effort to trade on the good name of ECS and confuse the public into believing there was an affiliation between the two companies, Sullivan used a name, logo and other images similar to those used by ECS and falsely represented that ESCS was the subsidiary of ECS in its marketing materials. Sullivan also modified ECS's website to direct customers away from ECS to ESCS.

2.      ECS has further discovered that Sullivan, while president of ECS, misappropriated company funds and other assets for his own personal gain, issued company loans to himself that he refuses to repay, sold company property and pocketed the gains, and titled company assets in his own name.

3.      In addition, he caused ECS to purchase equipment to operate his personal business. ECS discovered this transaction and refused to allow Sullivan to use the equipment purchased with ECS funds. In response, Sullivan stole ECS's electronic data and hard drives, holding them hostage in exchange for the use of ECS equipment. The board of directors elected to terminate his employment and now brings this action for damages and other relief.

## The Parties

4.      Plaintiff ECS is in the business of servicing, repairing, cleaning and refurbishing escalators and has been in business for over 50 years. ECS was incorporated in 1977 and has been doing business since that time. It operates under the assumed name of ECS Corporation. ECS is an Illinois corporation having its principal place of business at 2741 South 21st Street, Broadview, Illinois.

5.     Defendant Sullivan is the former president of ECS.  Defendant Sullivan is the former president of ECS and worked out of ECS's offices.

6.     Upon information and belief, Sullivan is the principal owner and president of Defendant ESCS, which is an Illinois company.  Upon information and belief, ESCS is now operated out of Sullivan's home.

7.     This Court has subject matter jurisdiction over ECS's claims pursuant to 28 U.S.C. §§ 1331, 1338, 1367 and 15 U.S.C. § 1121.

8.     Venue in this District is proper pursuant 28 U.S.C. § 1391(b).  Defendant Sullivan resides in the District and a substantial part of the events or omissions giving rise to the claim occurred in the District.

<u>ECS's Rules and Policies</u>

9.     Employees, including Sullivan, are subject to the company's rules and regulations including the company handbook, confidentiality agreement, and computer use policy.

10.     Pursuant to the company handbook, employees are prohibited from accepting outside employment that conflicts in any way with their responsibilities within the corporation.  (Ex. 1, ECS Handbook, §4, p.15.)  The handbook further provides that "employees may not conduct outside work or use corporate property equipment or facilities in connection with outside work while on corporate time."  (*Id.*) It also provides that "employees must never use their positions with the corporation … for private gain, to advance personal interests or to obtain favors or benefits for

themselves, members of their families or any other … corporations or business entities."
(*Id.* at ¶4, p. 9.)

11.     In order to protect the company's confidential information, ECS requires
employees to sign a confidentiality agreement and compensates them for doing so.
Pursuant to the confidentiality agreement executed by Sullivan, he agreed, among other
things, that he would not remove or copy any confidential company information
without permission of the company.  (Ex. 2, Confidentiality Agreement, ¶2.)

12.     The company also maintains policies against the use of its computers,
emails, telephones, fax machines that are contrary to the company's business interests.
(Ex. 3, Computer Use Policy, §2.)

### Development and Use of ECS's Name and Image

13.     ECS has invested significant amount of time and money in developing its
name and goodwill in the marketplace.  One of its principal forms of marketing is
through the development and use of its website.  The website prominently displays the
company's name, logo, address, phone number, and other images like the one below:



14.     ECS uses substantially the same logo and design for its business forms,
such as the one below:



### Defendants' Misappropriation of ECS's Corporate Identity

4

15.     While he was employed as president and sitting as a member of the board of directors, Sullivan misappropriated and used ECS's likeness, name, logos, website, money, employees, offices, telephones, telephone numbers, computers, business forms, and equipment to operate his own business, calling it ESCS.

16.     Aside from using a confusingly similar name, Sullivan and ESCS took ECS's corporate likeness, address and telephone number as their own.  Below is a comparison of ECS's name and logo and that used by ESCS:



17.     Defendants listed and used ECS's logo, name, phone numbers, contact information and other images on ESCS's website:



18.     ESCS's website showed images of a trailer – purportedly owned by ESCS – with advertising for ESCS, but using the 1-800 telephone number of ECS.  Sullivan directed employees of ECS to direct telephone calls to ESCS.



19.     Defendants used confusingly similar invoices to those of ECS that misappropriated the appearance of the ECS's logo, images, telephone number and address.  Below is a side-by-side comparison of two invoices:



20.     In addition, Defendants falsely represented that ESCS is a "subsidiary of ECS Corporation, the industry leader in escalator products" on its marketing materials.

21.     Defendants even used ECS' website to promote the services of ESCS going so far as including a link to ESCS' website.

## Sullivan Misappropriated Corporate Funds and Assets

22.     Sullivan also misappropriated and converted ECS's funds and assets for his own gain.  By way of example:

    a.  Sullivan sold nearly $30,000 of ECS scrap metal and, after being caught, returned only a portion of the money and personally pocketed over $11,000;

    b.  Sullivan caused ECS to loan him $114,000 and he refuses to repay any of those amounts;

    c.  Sullivan caused ECS to purchase a truck using ECS' funds and titled the truck in his own name and refuses to relinquish title to ECS;

d. Sullivan directed ECS to purchase approximately $75,000 worth of step cleaning machinery that was used by ESCS.

e. On or about June 11, 2013, Sullivan issued an ECS purchase order for the purchase for step cleaning equipment to be used by ESCS.

f. On June 17, 2013, Sullivan issued an ECS purchase order for the purchase of step cleaning equipment to be used by ESCS in the amount of $2,608.

g. Sullivan caused ECS to purchase equipment and supplies for his own company, ESCS; and

h. Sullivan used ECS's office using ECS's telephones, computers, and employees for the benefit of ESCS;

23. In short, Sullivan treated ECS and ECS' assets as his own personal piggy-bank, sometimes using ECS's money to support Sullivan's personal lifestyle and sometimes using it to support ESCS.

## COUNT I
## Violation of the Lanham Act 15 U.S.C. 1125(a)

24. ECS repeats and realleges paragraphs 1-23 of the Complaint as if fully set forth herein.

25. Defendants' actions, including but not limited to the wrongful use of ECS' name, likeness, logs, telephone numbers, address, and business forms constitutes unfair competition and an infringement of ECS's common law and statutory rights. Defendants engaged in the conduct with the intent to deceive the general public into believing that the goods and services sold by them were made by, approved by, sponsored by, or affiliated with ECS. Defendants' acts have been committed with the intent to pass off Defendants' services as those of ECS, and with the intent to deceive and defraud the general public in violation of 15 U.S.C. §1125(a).

26.     Defendants' acts, practices and conduct constitute unfair competition; false designation, description or representation; false advertising; and/or unfair and deceptive trade practices in that they are likely to cause confusion and mistake by ECS' customers, suppliers, and the general public.

27.     As a direct and proximate result of these acts, practices and conduct, ECS has been or is likely to be substantially injured in its business, including its reputation, resulting in loss revenues and profits and diminished goodwill and reputation.

28.     ECS has no adequate remedy at law because its name is unique and it represents to the general public ECS' identity, reputation and goodwill such that damages alone cannot compensate it for Defendants' misconduct.

29.     Unless enjoined by the Court, Defendants will continue to make false descriptions or representations and to use and infringe on ECS' name to ECS' irreparable injury.

## COUNT II
## Violation of 815 ILCS 510/2

30.     ECS repeats and realleges paragraphs 1-23 of the Complaint as if fully set forth herein.

31.     Defendants' acts, practices and conduct are likely to cause confusion and misunderstanding as to the source, origin, sponsorship, and/or approval of its goods and services as those of ECS and constitutes a deceptive trade practice in violation of the Illinois Deceptive Trade Practices Act (815 ILCS 510/2).

32.     As a direct and proximate result of these acts, practices and conduct, ECS has been or is likely to be substantially injured in its business, including its reputation, resulting in loss revenues and profits and diminished goodwill and reputation.

33.     ECS has no adequate remedy at law because its name is unique and it represents to the general public ECS' identity, reputation and goodwill such that damages alone cannot compensate it for Defendants' misconduct.

## COUNT III
## Common Law Unfair Competition

34.     ECS repeats and realleges paragraphs 1-23 of the Complaint as if fully set forth herein.

35.     Defendants' acts, practices and conduct are likely to cause confusion and misunderstanding as to the source, origin, sponsorship, and/or approval of its goods and services as those of ECS and constitutes common law unfair competition.

36.     As a direct and proximate result of these acts, practices and conduct, ECS has been or is likely to be substantially injured in its business, including its reputation, resulting in loss revenues and profits and diminished goodwill and reputation.

37.     ECS has no adequate remedy at law because its name is unique and it represents to the general public ECS' identity, reputation and goodwill such that damages alone cannot compensate it for Defendants' misconduct.

## COUNT IV
## Breach of Contract (against Sullivan)

38.     ECS repeats and realleges paragraphs 1-23 of the Complaint as if fully set forth herein.

39.     ECS had binding agreements with Defendant Sullivan in connection with his employment, including the ECS Handbook (Ex. 1), Confidentiality Agreement (Ex. 2) , and Computer Use Policy (Ex. 3).

40.     Through his actions Sullivan has breached those agreements and injured ECS.

## COUNT V
## Conversion (against Sullivan)

41.     ECS repeats and realleges paragraphs 1-23 of the Complaint as if fully set forth herein.

42.     Defendant Sullivan took unauthorized and wrongful control, dominion or ownership of ECS's property.

43.     ECS had rights in the property and at all times held the immediate and unconditional right to possession of the property.

44.     Defendant Sullivan has refused and failed to return ECS's property despite its demands for him to do so.

## COUNT VI
## Breach of Fiduciary Duty (against Sullivan)

45.     ECS repeats and realleges paragraphs 1-23 of the Complaint as if fully set forth herein.

46.     Defendant Sullivan owed a fiduciary duty to ECS.

47.     Through his actions and omissions, Defendant Sullivan has breached his fiduciary duties and injured ECS.

## PRAYER FOR RELIEF

WHEREFORE, ECS respectfully requests that the Court:

A.      Enter judgment in favor of ECS on all counts of the complaint and to award monetary damages in excess of $100,000 and in an amount established at trial.

B.      Permanently enjoin Defendants from taking any action that deceives or is likely to deceive the public into believing that the goods or services sold by ESCS were made by, approved by, sponsored by, or affiliated with those of ECS.

C.      Enter judgment requiring Defendants to make ECS whole by compensating it for the past and future losses it suffered as a result of Defendants' actions in amounts to be determined at trial;

D.      Enter judgment requiring Defendants to disgorge all profits resulting from their misconduct;

E.      Enter judgment requiring Defendant Sullivan to reimburse ECS for all benefits, including any salary or financial incentives, provided to Sullivan during the time in which he breached his fiduciary duty;

F.      Award ECS their attorneys' fees and costs;

G.      Award ECS all such other relief the Court deems just and equitable; and

H.      Provide all such additional or alternative relief as the law provides.

## JURY DEMAND

Plaintiff ECS requests a jury trial on all questions of fact raised by its Complaint.


Dated:  June 30, 2015                          Respectfully submitted,

**ECS Corporation**

By: /s/Darrell J. Graham
One of Their Attorneys

**ROESER BUCHEIT & GRAHAM** LLC
Peter S. Roeser
Darrell J. Graham
Monica Singh
Two North Riverside Plaza, Ste. 1420
Chicago, IL  60606
(312) 621-0303
proeser@rbglegal.com